Burt Boiler Works, Inc. is a close corporation formed in Alabama in 1962. At the time of incorporation, 1700 shares of stock were issued to its three incorporators: William Raymond Burt (decedent) — 850 shares; William Albert Burt (decedent's father) — 849 shares; and Consuelo Burt (decedent's mother) — 1 share.
Prior to incorporation, the business had been operated by members of the Burt family as a partnership. As is frequently the case, the owners and operators of the business did not want the fact of incorporation to substantially change the day to day operation of the business and they adopted a plan which would limit share ownership to persons approved by the original shareholders or their successors. Although there are various kinds of restrictions on transfer of the stock, which may be adopted (see O'Neal, Close Corporations, § 7.05), the Burt family adopted a first option provision whereby the corporation was granted a right of first refusal to purchase.
The original charter and by-laws of the corporation specifically provided that prior to any transfer of its stock, the owner must first offer to sell the stock to the corporation at market value or book value, whichever was higher. If the corporation declined to exercise this option to purchase, the remaining stockholders then had the same right to purchase in proportion to their respective stock ownership. The restriction specifically applied to testamentary transfer or disposition of the stock as well as inter vivos transfers.
William Albert Burt, decedent's father and one of the three original incorporators, died in 1963. The corporation did not exercise its option to purchase his 849 shares and they were distributed in accordance with William Albert Burt's will to Consuelo, his widow, 424 shares; to Mack Burt, Jean Myrick, Margaret Thomas, Thomas Burt, Helen Ciniglio and David Albert Burt (his children), 68 shares each; and to decedent, his son and one of the original incorporators, 17 shares.
In 1969, Helen Ciniglio, after the corporation declined to exercise its option to purchase her shares, sold her 68 shares to her sister, Margaret Thomas.
Consuelo Burt died in 1971. Her will bequeathed her 425 shares of stock equally to her children. The corporation exercised its option to purchase only five of these shares and the remaining 420 shares were distributed — 60 shares to each of her children, William Raymond (decedent), Mack, Jean, Margaret, Thomas, David Albert and Helen.
Margaret Thomas died on December 3, 1973, and the corporation exercised its option to purchase her 196 shares under the restrictive provision, which, in addition to being set out in the charter and by-laws, had also been made subject to a stockholder agreement executed in 1973. The restriction contained in all three instruments is, in pertinent part, as follows:
 "`No share of stock may be transferred, assigned, sold, or otherwise disposed of by the owner thereof unless such share has first been offered to the corporation at the book or market value thereof, whichever is higher; and if the corporation does not exercise this privilege of purchase, then the other stockholders shall have the same privilege of purchase in proportion to their respective stock ownership in the corporation.
 "`If a stockholder dies, the corporation may purchase the shares of stock of such deceased stockholder at the book or market *Page 329 
value thereof at the time of purchase, whichever is higher; and if the corporation does not exercise this privilege of purchase of such shares of stock of a deceased stockholder, then the remaining stockholders shall have the same privilege of purchase in proportion to their respective stock ownership in the corporation.
"`. . .'"
The stockholders' agreement contained and the charter and by-laws were amended to include a provision that, if the corporation exercised its option to purchase the shares of a deceased stockholder, it would have ten years in which to pay the purchase price.
William Raymond Burt died on November 24, 1976. At that time, he was president and general manager of the corporation and one of three directors of the corporation along with Mack L. Burt and Thomas H. Burt, his brothers, who had acquired their stock in the corporation under the wills of their father and mother.
At the time of his death, William Raymond Burt owned 927 shares of the company's stock, approximately 62% of the shares outstanding. By will, he left all but 11% of his stock to his children, in varying amounts: Raymond E. Burt, 32%; Hampton Granger Burt, 16%; James R. Burt, 16%; Howard Allen Burt, 16%; and Dorothy Jean Burt Faulkner, 9%. He bequeathed 7% of his stock to his sister, Helen Ciniglio, and 4% to his sister, Jean B. Myrick. As a result of the manner in which Mr. Burt's will bequeathed his stock, his children became the owners of approximately 55% of the outstanding stock and his brothers and sisters became the owners (including the stock which they already owned) of approximately 45%. He named two of his children co-executors of his will.
A few days after Mr. Burt died, his two brothers, the surviving members of the board of directors, held a special meeting of the board on November 29, 1976, and filled the vacancy created by Mr. Burt's death by appointing their sister, Jean Myrick. Each of these three was designated a corporate officer. The newly constituted board then elected to exercise, on behalf of the corporation, the option to purchase the 927 shares owned by the decedent at the time of his death. The board notified the children of Mr. Burt of this decision by letter which informed them that the corporation would purchase the stock at book value.
Thereafter, on December 8, 1976, the co-executors, acting in that capacity and as individuals holding 55% of the company stock, gave notice of a special meeting of the stockholders to be held on December 22, 1976. There having been no annual meeting of stockholders in 1976, the notice also designated the meeting as a "substitute annual meeting." At this meeting, the co-executors voted the stock of the decedent to elect a new board of directors. The new board removed the old board members as officers of the company and replaced them with Raymond Edward Burt, Dorothy Jean Burt Faulkner and James R. Burt, all children of the decedent. The new board rescinded and set aside the decision of the old board to exercise the corporate option to acquire the stock of the decedent under the restrictive agreement.
When the old board members refused to relinquish control of the corporation to the newly elected officers, the children of the decedent commenced this litigation. They sought to have the court declare their actions as stockholders of the company valid, that the meeting of stockholders and directors on December 22, 1976, was valid and lawful; and that the decision of the old board to exercise the option to buy the decedent's stock had been lawfully rescinded and set aside. Alternatively, they asked the court (if it did not agree with their primary contentions) to determine the amount they were entitled to receive for the stock in their father's estate.
By counterclaim, the minority stockholders sought specific performance of the stock transfer restrictions and provisions of the charter, by-laws and agreement and asked the court to order the transfer of the stock of the decedent to the corporation. They contended that the action of the co-executors and their attempts to exercise any *Page 330 
rights as stockholders of the company in calling the stockholders meeting, electing a new board and rescinding the action of the old board was null and void. They asked the court to declare that the old board members were duly elected and remained the actual officers and directors of the corporation.
Both sides filed motions for summary judgment supported by affidavits and other evidence. The court held a hearing on these motions and entered summary judgment in favor of the children of the decedent (the majority stockholders) and against the brothers and sisters of the decedent (minority stockholders). The latter appealed.
The trial court's order states the issues as follows:
 "The threshold legal question presented by these motions can be generally stated as follows: Where William Raymond Burt, deceased, devised by will his 62 percent bloc of stock in Burt Boiler Works, Inc., which stock was subject to an option to purchase by that corporation, may Mr. Burt's executors vote upon and otherwise participate in the corporate decision of whether the corporation will exercise its option? Upon a thorough review of the affidavits and other documents submitted by both parties in connection with the Motions for Summary Judgment, and upon consideration of extensive briefs and arguments of counsel, the Court concludes that there is no genuine dispute as to any of the material facts relative to this question. Upon close questioning by the Court, counsel for all parties have agreed that based upon the materials upon which their respective motions were submitted, there was no genuine issue as to any material fact and each moving party asserted that, accordingly, the respective movant was entitled to summary judgment as a matter of law. . . .
". . .
 ". . . Defendants do not dispute that these meetings were carried out in accordance with all the requirements of the bylaws, but Defendants contend that Plaintiffs simply had no right to act as stockholders of the corporation.
 "Based upon several theories, Defendants' counsel ably argues that the existence of the Charter, Bylaws, and Stockholder Agreement provisions described above precludes a valid transfer by Will of Mr. Burt's stock, that neither his executors nor his individual devisees became stockholders of the company, and that his executors did not have the right to vote Mr. Burt's stock, to exercise other stockholder's rights, or participate in the corporate decision of whether the corporation would exercise its admittedly valid option. . . ."
Both sides concede the validity of the restrictive arrangement. They differ only on whether the restrictive agreement precludes the executors of the estate of the majority stockholder to vote that stock. It is the appellants' argument that the executors "were not stockholders" and, therefore, had no authority to call a stockholders' meeting and any action taken at such a meeting was void. But nothing in the law or in the restrictive agreement prevents the executors from voting the stock. The trial court recognized, as we do, that the option such as the one utilized here is a common method for restricting ownership of stock in closely held corporations to a particular group. But such options do not deprive the selling stockholder of the right to vote his stock unless he contracts that right away or the charter or by-laws prohibit it. Fletcher on Corporations, §§ 2028, 2029 and 2032.
§ 10-2-134 (f), Code 1975, provides that shares held by an executor may be voted by him without transfer of such shares into his name. The by-laws of this corporation provide in Article I, §§ 3 and 4:
 "3. Substitute annual meetings. If the annual meeting shall not be held on the day designated by these by-laws, a substitute annual meeting may be called in accordance with the provisions of Section 4 of this Article. A meeting so called shall be designated and treated for all purposes as the annual meeting. *Page 331 
 "4. Special meetings. Special meetings of the shareholders may be called at any time by the President, Secretary of Board of Directors of the corporation, or by any shareholder pursuant to the written request of the holders of not less than 10% of all the shares entitled to vote at the meeting."
Thus, the law permits, without specific restrictions, an executor to vote the shares held in the name of a deceased stockholder. The law (§ 10-2-130, Code 1975) and the by-laws of this corporation permit any stockholder or group of stockholders holding not less than 10% of the shares entitled to vote to call a meeting of the stockholders.
Article III, § 5, of the by-laws of the corporation provides:
 "5. Removal. Directors may be removed from office with or without cause by a vote of shareholders holding a majority of the shares entitled to vote at an election of the directors."
The corporate charter, by-laws and the stockholder agreement are silent on the question of whether the selling stockholder or his legal representative may vote as a director or shareholder against the exercise by the corporation of the option. Professor O'Neal, in his work, Close Corporations, § 7.18, emphasizes the importance of this question in drafting documents to restrict transferability of shares:
 ". . . Finally, whenever the corporation is given a first option to purchase shares of a holder who decides to sell or of a holder who dies, the restrictive provision should specify whether a selling shareholder or the legal representative of a deceased holder may vote as a director or shareholder against the corporation's exercise of the option. . . ."
O'Neal cites Kentucky Package Store v. Checani,331 Mass. 125, 117 N.E.2d 139 (1954), in which the court held that the administrator had the right to vote the shares of the majority stockholder, saying:
 ". . . We think the matter of the purchase is one which properly may be considered by the stockholders. It involves the right of the corporation to determine in whom the future control of its management shall be vested. In the administration of corporations it is a fundamental principle that the majority in value of the stockholders can, in the absence of special provisions to the contrary, regulate and control the lawful exercise of corporate powers. Durfee v. Old Colony Fall River Railroad, 5 Allen 230, 242; Albert E. Touchet, Inc. v. Touchet, 264 Mass. 499, 509, 163 N.E. 184; Bushway Ice Cream Co. v. Fred H. Bean Co., 284 Mass. 239, 244, 187 N.E. 537; Opinion of the Justices, 261 Mass. 556, 596-597, 159 N.E. 70. Fletcher, Cyc. Corporations, § 2097. There appears no provision in the by-laws of this corporation which restricts the exercise of corporate powers by the stockholders. . . ." (117 N.E.2d at 141)
To the same effect: Boss v. Boss, 98 R.I. 146, 200 A.2d 231
(1964).
The corporate decision to exercise the option under the restrictive plan adopted in this case was left to the Board of Directors, but because the majority held enough stock to call a meeting of stockholders and also held enough (the majority) to elect a new board, it had the legal authority to rescind the action of the old board. We do not agree, however, with the Massachusetts Court that absent "specific provisions to the contrary" a majority may always regulate and control the lawful exercise of corporate powers.
It is no longer seriously debated that majority stockholders owe a duty to at least act fairly to the minority interests, and the majority cannot avoid that duty merely because the action taken is legally authorized. O'Neal, Close Corporations, § 8.07, says:
 "In the past, some courts have permitted majority shareholders to exercise, without any restriction other than good faith, whatever powers they had as controlling shareholders under the statutes and the corporation's charter and bylaws; and further, they have treated the fiduciary duties of the directors as running only in favor of the corporation, not to *Page 332 
the minority shareholders. This view that the controlling shareholders and the directors do not owe fiduciary duties to minority shareholders appears outmoded, at least as applied to . . . attempts to eliminate minority shareholders or to deprive them of their proportionate rights and powers without a just equivalent. Where several owners carry on an enterprise together (as they usually do in a close corporation), their relationship should be considered a fiduciary one similar to the relationship among partners. The fact that the enterprise is incorporated should not substantially change the picture. When businessmen organize a corporation they enter into their relationship against a background of corporation statutes and common law doctrine which vest in the directors the power to manage the corporation's affairs and in the directors and certain percentages of the shareholders power to effect fundamental changes in the corporation . . . But this does not mean that the directors or the majority shareholders should be permitted to exercise their powers arbitrarily or without regard to the legitimate expectations of the minority shareholders; and many of the older decisions and practically all of the recent ones indicate that controlling shareholders, in some circumstances at least, owe fiduciary duties to minority shareholders, and that the courts will require them (whether they act in their capacity as shareholders or through directors or officers whom they control) to observe accepted standards of business ethics in transactions affecting rights of minority shareholders . . ."
See: Southern Pacific Co. v. Bogert, 250 U.S. 483, 487, 488,39 S.Ct. 533, 535, 63 L.Ed. 1099 (1919), where Justice Brandeis, speaking for the court, said:
 ". . . The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors . . ."
Accord: Lebold v. Inland Steel Co., 125 F.2d 369, 373 (C.A. 7th Cir. 1941), where the Seventh Circuit held:
 ". . . However proper a plan may be legally, a majority stockholder can not, under its color, appropriate a business belonging to the corporation to the detriment of the minority stockholder . . ."
In the instant case, the minority stockholders alleged by way of their counterclaim that the acts of the majority amount to an attempt to use the stock for their own personal advantage contrary to and in conflict with the business interests of the corporation and its stockholders. However, they offered no evidence to prove that allegation, and conceded at the hearing on the motions for summary judgment, that there was no issue of fact to be tried.
The majority stockholders have ousted the appellants from positions on the board of directors and renamed themselves as officers of the corporation. The majority now controls the corporate management. Should they, acting through the board and corporate officers, which they control, deprive the minority stockholders of their just share of the corporate gains, such would, of course, be actionable. Among the techniques described by O'Neal and Derwin (Expulsion or Oppression of Business Associates: "Squeeze-Outs" in Small Enterprises, (1961) to oppress minority stockholders are: withholding of dividends and siphoning off earnings by paying high compensation to majority stockholders or their relatives.
The appellants have shown only that the majority has taken control of the corporation. They have not shown, however, that they have been deprived of any rights they have as stockholders in the corporation.
Of course, the remaining stockholders have the right under the charter by-laws and the stockholder agreement to purchase the stock of the decedent "in proportion to their respective stock ownership in the corporation." It is possible, if this right is exercised, that the majority stockholders can become the minority or if all of "the *Page 333 
remaining stockholders" exercise the privilege of purchasing the decedent's shares, his children would not take any stock under his will.
The trial court's judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.