HOUSTON, Justice
(concurring in part and dissenting in part).
I concur with the majority on part I; that portion of part II that affirms the trial court’s judgment as to loan fees; part III; and that portion of part V that affirms the decision of the trial court as to the award of attorney fees to counsel for the majority stockholder defendants.
I dissent as to part IV (“squeeze out”), and I dissent from the reversal as to the award of attorney fees to counsel for the minority stockholder plaintiffs. I believe that the record contains sufficient evidence to justify the trial court’s award of retroactive salaries, and I would not remand for additional evidence on this issue.
I dissented in part in Banks v. Bryant, 497 So.2d 460 (Ala.1986). The basis for my dissent on these issues in the present case is substantially the same as it was in the earlier case:
“This case was presented to the trial court ore tenus, and on that fact hangs some of my disagreement with the majority.
“When evidence is presented ore tenus without a jury, factual findings are presumed correct and judgment based thereon will not be disturbed on appeal unless it is plainly and palpably erroneous. Wadsworth House Movers, Inc. v. Salvage One Demolition, Inc., 474 So.2d 686 (Ala.1985); Etheridge v. Yeager, 465 So.2d 378 (Ala.1985); 2B Alabama Digest § 1008.1(5). This Court must affirm the trial judge’s decision if, under any reasonable aspect, it is supported by any credible evidence. Chism v. Hicks, 423 So.2d 143 (Ala.1982). Furthermore, where a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Thomas v. Davis, 410 So.2d 889 (Ala.1982).
“As an appellate court, we have neither the luxury nor the burden that the trial court has as trier of fact. The trial court found that there was no [squeeze out]. Is there credible evidence to support this finding? Yes.”
497 So.2d at 465-66.

Issue IV (squeeze out) “All this and heaven too.”

[12]

As I understand the majority’s concept of the squeeze out principle, it is that “controlling shareholders and directors” must not attempt to “eliminate minority shareholders or to deprive them of their proportionate rights and powers without a just equivalent,” and that the controlling stockholders must not exercise their powers arbitrarily or without regard to the “legitimate expectations of the minority shareholders.” Burt v. Burt Boiler Works, Inc., 360 So.2d 327, 331-32 (Ala.1978). Controlling stockholders must not force the minority stockholders into a position of “holding stock that pays no dividends and which cannot, as a practical matter, be sold” and must not deprive minority stockholders of their just share of the corporate gains. Galbreath v. Scott, 433 So.2d 454, 457 (Ala.1983). I have no disagreement with this as a legal concept of “squeeze out.” The facts must then be sifted and weighed by the trier of fact, whose decision we must affirm if “under any reasonable *498 aspect, it is supported by any credible evidence.” Banks v. Bryant, supra.
These facts were before the trial court:
Plaintiffs Purchase Price of Original Shares on 3/3/77 Value of same stock on 12/31/86
Phillip B.M. Banks $5,000.00 $916,600.00
William W. Humphries $2,500.00 $458,300.00
Bradley Brown, Jr. $5,000.00 $916,600.00
Arthur Taylor, Jr. $8,750.00 $1,604,050.00
Estelle Taylor $8,750.00 $1,604,050.00
Vesta L. Smith $5,000.00 $916,600.00
J.E. McCampbell $2,000.00 $366,640.00
Greene Group, Inc., showed an annual percentage increase in stock value of 1,870%; a percentage increase in stock value for the period of comparison (March 3, 1977, to December 31, 1986) of 18,232%; and in terms of dollars per share, an increase in stock value from $25.00 per share to $4,583.00 per share. Jim Hart, the accounting expert for the minority stockholder plaintiffs, testified that he knew of no other company that had as great a growth rate in stock value as Greene Group, Inc., did during this period.
There was evidence that retention of corporate earnings and reinvestment of these earnings in Greene Group, Inc., produced this growth in stock value, and that publicly traded companies that had significant increases in stock value during this period followed this business practice. Numerous examples of publicly traded growth companies were shown to the trial court. The Alabama based companies of Kinder-Care, Inc., Bruno’s, and Russell Corporation had the largest increases in stock values of all companies compared, with the exception of Greene Group, Inc. For the comparison period (March 3, 1977, to December 31, 1986), Kinder-Care, Inc., had an annual growth rate or increase in stock value of 259% each year (1,611% less than Greene Group, Inc.); Russell Corporation had an annual growth rate or increase in stock value of 200% (1,670% less than Greene Group, Inc.); and Bruno’s had a 177% increase (1,693% less than Greene Group, Inc.). Over the same period, the total percentage increase in stock value for Kinder-Care, Inc., was 2,400% (15,832% less than Greene Group, Inc.); for Russell Corporation was 1,995% (16,237% less than Greene Group, Inc.); and for Bruno’s was 1,461% (16,771% less than Greene Group, Inc.). In terms of dollar value increase, after adjustment for stock splits, Kinder-Care, Inc., went from a value of $9.75 per share to $231.15 per share; Russell Corporation moved from $8.00 per share to $164.00 per share; and Bruno’s increased from $15.50 per share to $242.00 per share; and Greene Group, Inc., increased from $25.00 per share to $4,583.00 per share.
The minority stockholders have received dividends. The undisputed evidence is that for each $1,000.00 invested by the minority stockholders, they were paid $2,700.00 in dividends from March 3, 1977, through 1987. Dividends will be discussed in more detail later in this opinion, but the minority stockholders have been paid substantial dividends.
What other expectations could minority stockholders have had when they purchased their stock? Employment by the corporation? The evidence showed that at the time the corporation was formed, plaintiff Bradley Brown, Jr., was the owner and operator of the famous “Cotton Patch” restaurant; Phillip B.M. Banks operated Banks and Company, a building supply business; William W. Humphries was pres *499 ident of Merchant’s Bank in Eutaw, Alabama; A.R. and Estelle Taylor were in a business that manufactured hardwood plywood for the cabinet industry; Vesta L. Smith was not an original stockholder but holds the stock purchased by her deceased husband; and J.E. McCampbell was an employee of Greene County Greyhound Park, Inc., at the time of trial and had been since Greenetrack opened. There is no evidence that any of the minority stockholder plaintiffs, who are not employed by the corporation, had, at the time they entered into this most profitable venture, any reasonable expectation of employment by the corporation that was thwarted by the majority stockholder defendants.
So what does the majority find as evidence of squeeze out that is so compelling that it concludes that the trial court’s finding was plainly and palpably wrong?
The majority finds that the majority stockholder defendants have “paid inadequate dividends or failed to pay dividends.” The facts before the trial court showed that the following dividends were paid:
Plaintiffs Purchase Price of Original Shares in 1977 Total Dividends Received' Through 1987
Phillip B.M. Banks $5,000.00 $13,500.00
William W. Humphries $2,500.00 $ 6,750.00
Bradley Brown, Jr. $5,000.00 $13,500.00
Arthur Taylor, Jr. $8,750.00 $23,625.00
Estelle Taylor $8,750.00 $23,625.00
Vesta L. Smith $5,000.00 $13,500.00
J.E. McCampbell $2,000.00 $ 5,400.00
There was evidence that the dividend had historically increased at the rate of approximately $2.50 per share, per year, and that the dividend in 1987 was $17.50 per share, which represented a 70% return on the original investment for that year. The trial court could have found that the dividends were not inadequate or abusive, particularly with management following a business philosophy of retention and reinvestment of earnings that has produced extraordinary growth in the value of the stock. I cannot hold that the trial court plainly and palpably erred in not finding that this was evidence of a “squeeze out.”
The majority finds that the majority stockholder defendants “have removed all minority stockholders from all positions as officers and directors.”
The trial court could have found from the evidence that J.C. Poole, Jr., and J.O. Banks were directors of Greene Group, Inc., or its predecessor at one time. Poole voluntarily resigned for a personal business reason, and Banks was not reelected because he had serious health problems that affected his ability to function as a director. No plaintiff was ever an officer or director of Greene Group, Inc. I am not persuaded by the majority’s assertion that this made the trial court’s factual finding of no squeeze out plainly and palpably wrong.
The majority stockholder defendants “have removed cumulative voting.” I am not sure that this in and of itself is evidence of a squeeze out; however, I do not believe that cumulative voting was ever authorized. Ala.Code 1975, § 10-2A-53(d), provides that “if cumulative voting is authorized by the articles of incorporation,” then cumulative voting for directors is allowed. The articles of incorporation of Greene Group, Inc., never provided for cumulative voting for directors. The by-laws provided for cumulative voting, but not the articles of incorporation. The by-laws were amended to conform to the articles of incorporation and § 10-2A-53(d). The plaintiffs never had this right, so how can we hold that the trial court was plainly and palpably wrong in not finding that the removal of cumulative voting was evidence of a “squeeze out.”
*500 The majority stockholder defendants “voted a raise for Bryant, Phelps, and May in 1987 which was a marked increase from previous years.”
After hearing the evidence of experts, the trial court set retroactive compensation and compensation for the year 1987. In its final judgment, the trial court wrote:
“The Court finds from the undisputed evidence at trial that the salaries of the individual defendants, Bryant, Phelps and May for the year 1987 were set by the Board of Directors of Greene Group, Inc. The Court further finds from the undisputed evidence that defendants, Bryant, Phelps and May did not participate in any way in the decision made by the Board of Directors of Greene Group, Inc. The 1987 salaries were set by the Board of Directors of Greene Group, Inc. in reliance upon the opinion of an expert especially employed by Greene Group, Inc. Such employment was a good faith effort on the part of the Board of Directors of Greene Group, Inc. to set reasonable salaries for Bryant, Phelps and May. However, the Board of Directors of Greene Group, Inc. did not consider reasonable compensation for past services rendered by defendants, Bryant, Phelps and.May to Greene Group, Inc. This Court is of the opinion that to allow plaintiffs to benefit from such services without compensating defendants, Bryant, Phelps and May for their management skill and expertise would be unequitable and unjust.”
These findings are supported by the evidence, particularly the testimony of Dr. Clyde Scott of the School of Business of the University of Alabama. The trial court did not plainly and palpably err in finding that this was not evidence of a “squeeze out.”
The majority finds that the trial court plainly and palpably erred in not finding that the majority stockholder defendants had squeezed out the minority stockholder plaintiffs by having “cancelled the minority stockholders’ right to use the recreational farm, Thisildu, in Greene County.”
I do not believe that this would in and of itself support an action based on an alleged “squeeze out”; however, there was evidence that the minority stockholders’ right to use the farm was not “cancelled,” but that a new procedure was implemented to allow the corporation to know who was using this farm. I cannot hold that the trial court plainly and palpably erred in not finding that this was evidence of a squeeze out.
The majority finds that the cancellation of the preemptive rights of stockholders is evidence of a squeeze out. This applied to the majority stockholder defendants, who owned over 81% of the capital stock, as well as to the minority stockholder plaintiffs, who owned less than 19% of the capital stock. What the minority was denied, the majority was denied. The percentage of ownership remains the same, and I find no evidence of a cash flow problem that will require the sale of additional capital stock. We should not reverse the trial court for failure to hold that this constituted a “squeeze out.”
The majority holds that the trial court plainly and palpably erred in not finding that there was a squeeze out of the minority stockholder plaintiffs.[13] This Court found that there was a usurpation of a *501 corporate opportunity in Macon County, in Banks v. Bryant, supra. Justice Almon and I disagreed, and my dissent, concurred in by Justice Almon, appears at 497 So.2d at 465. However, in the case at issue, the majority stockholder defendants, in accordance with the reasoning of the majority in Banks v. Bryant, supra, admitted usurpation of corporate opportunities and the trial court fashioned a remedy for that. The minority stockholder plaintiffs should not receive more than the remedy that the trial court has given them for this. Therefore, I cannot hold that the trial court plainly and palpably erred in not also finding that the usurpation of a corporate opportunity entitled the minority stockholder plaintiffs to an additional remedy for “squeeze out.”
I am aware of the theorists who advocate renegotiation of the legal contract between a corporation, its stockholders, and its management to reflect the perceived separation between ownership of corporate stock and control of the corporate entity. A.A. Beale and G.C. Means, The Modern Corporation and Private Property (1932); A. Chayes, The Modern Corporation and The Rule of Law in The Corporation in Modern Society (1959); E.S. Herman, Corporate Control, Corporate Power (1981); and R.B. Stevenson, Jr., Corporation and Information (1980). This is a move to have management, not the majority of the stockholders, control the corporate entity. As I understand their argument, it is that the modern stockholder is not an owner of the corporate entity but a rentier (“a man of independent means”; a “holder of an annuity”; or one who “has a small private income ... a small investor,” Cassell’s French-English English-French Dictionary 639 (Rev. ed. 1981)), who has no rights other than a satisfactory return on his investment and the right to liquidity. I do not subscribe to that legal theory. I subscribe to what I believe is the traditional theory of corporate law, for I view the corporate relationship as one in which the stockholders, as owners of the corporation, control the corporation through their voting power. The majority of the stockholders elect the board of directors and approve fundamental corporate transactions.
In the case at issue, we are not confronted with management of a corporation versus a majority of the stockholders of that corporation. Management is composed of the majority of the stockholders (over 81% of the stockholders); and the actions of the majority of stockholders/management is challenged by the holders of less than 19% of the common stock. Thus, we face the “Madisonian dilemma” in a corporate setting. What rights do minority stockholders have against the majority stockholders who are management? In my opinion, controlling stockholders owe a duty to minority stockholders not “ ‘to eliminate minority shareholders or to deprive them of their proportionate rights and powers without a just equivalent’ ” and not to arbitrarily deprive them of their “ ‘legitimate expectations.’ ” Burt v. Burt Boiler Works, Inc., supra. I do not find that the majority stockholder defendants in this case breached that duty; and, therefore, I cannot hold that the trial court was plainly and palpably wrong in finding that the majority stockholder defendants did not eliminate the minority stockholders’ rights or powers without a just equivalent and did not arbitrarily deprive the minority stockholders of their legitimate expectations. Any expectations of more than the minority stockholder plaintiffs have received are great expectations beyond legitimacy.

Attorney Fees

Is the attorney fee of $905,603.00 and expense reimbursement of $61,719.31 set by the trial court unreasonable and inadequate as a matter of law? I have reviewed the briefs and the pertinent parts of the record. I have examined the nature of the attorney/client fee and expense arrangement initially entered into by the minority stockholder plaintiffs and their most competent attorney. I have read that attorney’s testimony and the testimony of other attorneys concerning the reasonableness of an attorney fee in this case. I have studied Peebles v. Miley, 439 So.2d 137 (Ala.1983); Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238 (Ala.1985); and Blum v. Stenson, 465 U.S. 886, 104 *502 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Should we apply the common fund doctrine? I question this because of the fee arrangement between the attorneys and the minority stockholder plaintiffs, who were to guarantee payment to the attorneys of certain fees and expenses and be reimbursed if the attorney fees and expenses were paid out of the fund recovered. However, for purposes of this dissent, I will assume that we should apply the common fund doctrine. To me, it is relevant where the common fund came from (100% from the majority stockholder defendants or corporations owned by them) and who benefits from the common fund (in percentage of ownership, the minority stockholder plaintiffs benefit less than 19% and the majority stockholder defendants, from whom 100% of the common fund came, benefit more than 81%).
Considering all of this, did the trial court abuse its discretion in awarding attorney fees to the minority stockholder plaintiffs? I cannot hold that it did, and there is nothing in the majority opinion that in any way changes my mind on this issue.
ALMON, J., concurs.

. Attributed to Matthew Henry, 1662-1714.

. The majority opinion directs the trial court on remand to determine whether the majority's decisions were made for the purpose of squeezing out the minority. The trial court has made that determination. The trial court specifically found that the majority had "at all times acted in good faith,” and "[is] not now and [has] not at any time in the past been guilty of fraud, willful negligence, malice, or bad faith.”
Upon motion under Rule 59, A.R.Civ.P., to alter, amend, or vacate the final order and to consider, among other claims, the "tort of 'squeeze out,' ” the trial court held a hearing that was consented to by the parties; and, thereafter, it entered an order specifically addressing certain claims and then held that the court had carefully considered the other claims, evidence, and exhibits presented by the minority stockholder/plaintiffs, and after such consideration found that they were entitled to no relief. I consider this an adjudication on the claim of "squeeze out”; therefore, for the majority of this Court to remand as to this issue, it must have found that the trial court plainly and palpably erred.