This appeal involves questions concerning the rights of minority shareholders in a close corporation. Specifically, this Court is presented with the question of what kind of claims the plaintiff brought and whether the trial court appropriately applied the law to those claims. Because I disagree with the majority's rationale and most of its conclusions, I respectfully concur in the result in part and dissent in part.
 Facts and Procedural History
Raymond E. Brooks owned a 19% interest in the Hill Brooks Coffee Company (the "Company"). The remaining interest in the Company was owned by Leroy Hill, Mr. Brooks's brother-in-law. On June 11, 1993, Hill presented Mr. Brooks with a proposal for Hill to purchase Mr. Brooks's share of the Company for $1,196,753.00 to be paid over 10 years at 8% interest per year. They completed the sale on that date by executing a written sales agreement. Mr. Brooks died on October 26, 1994.
Following Mr. Brooks's death, his wife, Dorothy Hill Brooks, was appointed executrix of his estate. She sued Hill and the Company, claiming that the defendants had misrepresented the value of her late husband's stock and had wrongfully induced him into signing an agreement to sell the stock. She later amended her complaint to allege a breach of fiduciary duty, fraud, and a "willful and intentional" conspiracy to devalue her late husband's stock with intent to purchase it.
The defendants' main arguments in support of the trial court's judgment dismissing Brooks's claims stated in her amended complaint are that:
1. She had no standing to bring those claims.
 2. Her husband had sold his stock pursuant to a written agreement.
 3. Any alleged misrepresentation as to the value of the stock occurred, if at all, on June 11, 1993; the amended complaint alleging a breach of fiduciary duty, fraud, and conspiracy to devalue her husband's stock with intent to purchase it, was not filed until January 18, 1996; and the filing of the amended complaint did not relate back to the date of the filing of the original complaint.
The trial court granted the defendants' motion to dismiss the amended complaint. Brooks appealed.
 I.
The majority concludes that the plaintiff did not allege sufficient facts to support a claim of "squeeze-out." I disagree. Because my conclusions in this case rest largely upon my understanding of the nature of that claim, I will address that issue first.
The nature of the squeeze-out cause of action is the subject of great debate in Alabama and elsewhere. In Burt v. BurtBoiler Works, Inc., 360 So.2d 327 (Ala. 1978), this Court first recognized a cause of action for the squeeze-out of minority shareholders. As a preliminary matter, the Burt Boiler *Page 769 Works Court stated that "[i]t is no longer seriously debated that majority shareholders owe a duty to at least act fairly to the minority interests." Id. at 331. A violation of that duty can give rise to a cause of action. Such a cause of action can arise when the majority shareholders, "acting through the board and corporate officers, which they control, deprive the minority stockholders of their just share of the corporate gains." Id. at 332.
In Galbreath v. Scott, 433 So.2d 454 (Ala. 1983), the Court reaffirmed the concept of the squeeze-out cause of action. In that case, however, the complaint had been based on a claim that the majority shareholders were wasting corporate assets. The Court held that the claim was properly a derivative one and that the injury to shareholders was only secondary. "In such an action the corporation is the real party in interest and would be the one in whose favor a judgment would be rendered." Id. at 457.
The modern squeeze-out claim came into its own in Ex parteBrown, 562 So.2d 485 (Ala. 1990). In that case, the action was based on a claim that the majority shareholders had attempted to force the minority owners to sell their shares at a price below fair value. The Court held:
 "The minority has made an affirmative showing that the majority has systematically sought to squeeze out the minority. . . . We direct the trial court on remand to determine whether the majority has acted in the best interest of all the stockholders or whether its decisions were made for the purpose of squeezing out the minority, as the bare facts seem to suggest. If the trial judge determines that the rights and interests of the minority stockholders have been prejudiced by the actions of the majority stockholders, he shall determine and fix an amount necessary to compensate the minority for this breach of duty owed them by the majority."
Id. at 494 (citations omitted).
Despite our recognition of the squeeze-out cause of action, we nevertheless did not specify in Brown whether it was grounded in contract or in tort. Shortly thereafter, members of the bar began to disagree over the nature of the squeeze-out cause of action.[6] In his concurring opinion in Fulton v.Callahan, 621 So.2d 1235 (Ala. 1993), Justice Houston explained his reasons for believing that the cause of action is one evolving out of contract rather than tort. In a later case, Justice Houston expressed his hope that this Court "would clarify the nature of the cause of action for oppression or squeeze-out of minority stockholders and the rules regarding standing to bring such an action." Gilliland v. USCO PowerEquipment Corp., 631 So.2d 938, 939 (Ala. 1994) (Houston, J., concurring in the result). Because Gilliland was reversed on other grounds, that case did not present an appropriate opportunity for this Court to accept Justice Houston's suggestion.
A useful way of understanding the nature of close corporations is to examine the law relating to joint ventures and partnerships.[7] By considering the issues presented in this case from that perspective, one may understand the creation of a close corporation as the creation of "a long-term relational contract which contemplates that each participant will contribute capital or services and that proceeds will be equitably shared." J.A.C. Hetherington, Defining the Scope ofControlling Shareholders' Fiduciary Responsibilities, 22 Wake Forest L.Rev. 9, 22 (1987). Of course, the contract establishing the corporation is embodied in the articles of incorporation. It governs the duties and responsibilities of the shareholders, directors, and officers. That written contract may not, however, contain an explicit statement of all the parties' understandings, but it is implicit *Page 770 
that "parties who form closely held firms intend an equitable sharing of returns." Id. at 28. Consequently, I would hold that if the articles do not explicitly reflect that intention of the shareholders, then that intention should be implied.
My view of the nature of the squeeze-out cause of action is based on the theory of an implicit agreement to share the proceeds from the corporation. Squeeze-out claims "can only be given concrete meaning by reference to the explicit or implicit ex ante understanding of the parties and reasonable expectations based upon that understanding." Id. at 25. That understanding, as this Court recognized in Burt Boiler Works, includes a requirement of acting fairly. A violation of the duty to act fairly is a breach of the parties' explicit or implicit agreement. For the breach of that agreement, I believe the appropriate remedy is one that would protect the reasonable expectations of the shareholders.
I agree with the late Dean Hodge O'Neal, whose opinions have had a great impact on the development of close corporation law in Alabama, and who wrote:
 "[T]he reasonable expectations of the shareholders, as they exist at the inception of the enterprise, and as they develop thereafter through a course of dealing concurred in by all of them, is perhaps the most reliable guide to a just solution of a dispute among shareholders, at least a dispute among shareholders in the typical close corporation."
F. Hodge O'Neal, Introduction (Symposium: Rights of MinorityShareholders), 22 Wake Forest L.Rev. 1, 5 (1987). According to O'Neal, in fashioning an appropriate remedy in cases before them, trial judges "can 'imply' or 'construct' additional terms for the contract to give effect to the underlying assumptions of the parties at the time they entered into it and protect reasonable expectations generated by the business relationship which the contract created." Id. at 6.
The distinction I see between closely held corporations and widely held corporations is material to my view on the appropriate resolution of this case. I believe that the most appropriate way of approaching a dispute between shareholders of closely held corporations is to consider it, as discussed above, as a dispute over the breach of the explicit or implicit agreements of the shareholders. Further, I believe that this theory is applicable in cases where the cause of action might traditionally be treated as a derivative claim. Where claims involve closely held corporations, I believe it is more efficient, and a better reflection of the true state of affairs among "partners" in such a business, to treat such claims as claims of squeeze-out.
 II.
In count two of her complaint, the plaintiff asserts two claims, one in her individual capacity and one in her capacity as executrix of her husband's estate. With regard to the claim asserted in her individual capacity, the trial court held that because she was not a shareholder in the corporation, Hill owed the plaintiff no fiduciary duty. The majority of this Court reaches the same conclusion. In contrast, I would note that there was no agreement between the plaintiff and the defendants that was breached. Because there was no breach of any agreement, I concur in the result reached by the majority, that the individual claim was properly dismissed.
 III.
I now turn to the issue whether the trial court appropriately applied the law to that claim in count two that the plaintiff stated in her capacity as executrix of her husband's estate. The majority concludes that this claim — that the defendant wasted corporate assets — could be pursued only as a derivative claim; it holds, therefore, that the trial court correctly dismissed that claim.
As I have noted above, this Court, in Burt Boiler Works, recognized a duty of majority shareholders to "act fairly" to minority shareholders. That duty arises from the nature of the relationship between the majority shareholders and the minority shareholders. See Southern Pacific Co. v. Bogert, 250 U.S. 483,39 S.Ct. 533, 63 L.Ed. 1099 (1919). It is the breach of this duty that gives rise to a *Page 771 
claim of minority shareholder squeeze-out.[8] Consequently, I would reverse the trial court's dismissal of this claim.
 IV.
Counts three and four allege, I believe, a claim of squeeze-out based on the undervaluation of the stock with intent to purchase, alleged to have occurred on June 11, 1993. The trial court held that the claims asserted by Brooks in counts three and four were claims of fraud. Therefore, the court held, they were based on tort and were subject to the two-year statute of limitations. However, construing the allegations of counts three and four in accordance with Rule 8(f), Ala. R. Civ. P., I believe Brooks has stated a claim of minority shareholder squeeze-out; such a claim would, under contract law, be subject to the six-year statute of limitations. § 6-2-34, Ala. Code 1975. Accordingly, I would reverse the trial court's dismissal of counts three and four.
 Conclusion
I concur in the result of the majority opinion insofar as it affirms the dismissal of that claim the plaintiff states in count two in her individual capacity. However, I respectfully dissent from the remainder of the majority's opinion. I would reverse the dismissal of the claim the plaintiff states in count two as executrix of the estate of Raymond Brooks; and I would reverse the dismissal of the plaintiff's claims stated in count three and count four.
[6] See Andrew P. Campbell, Litigating Minority Shareholder Rightsand the New Tort of Oppression, 53 Ala. Law. 108 (1992), and Michael E. DeBow, "Oppression" of Minority Shareholders:Contract, Not Tort, 54 Ala. Law. 128 (1993).
[7] In Galbreath, we recognized that "[w]hen shareholders serve on the board of directors and appoint themselves as officers, the enterprise acquires many of the attributes of a partnership or sole proprietorship and ceases to fit neatly into the classical corporate scheme." 433 So.2d at 457.
[8] In Ex parte Brown, supra, this Court discussed some of the ways the claim may be triggered:
 " 'The squeezers may refuse to declare dividends; they may drain off the corporation's earnings by exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, by high rental agreements for property the corporation leases from majority shareholders, or by unreasonable payments under contracts between the corporation and majority shareholders; they may deprive minority shareholders of corporate offices and of employment by the company; they may cause the corporation to sell its assets at an inadequate price to the majority shareholders or to companies in which the majority are interested; they may organize a new company in which the minority will have no interest, transfer the corporation's assets or business to it, and perhaps then dissolve the old corporation; or they may bring about the merger or consolidation of the corporation under a plan unfair to the minority.' "
562 So.2d at 492 (quoting F.H. O'Neal and R. Thompson,O'Neal's Oppression of Minority Shareholders § 3:02 (2d ed. 1985)).