JONES *v.* GREEN.

1. CORPORATIONS—CONTROL OF STOCK—VALIDITY OF TRANSFER.
    It is competent for a stockholder in a corporation to obtain con-
        trol of a majority of the stock by purchase, and the validity
        of the transfer to him will not depend on his motive or
        purpose in acquiring it.

2. SAME—STOCK HELD BY ADMINISTRATOR—VOTING POWER.
    Shares of stock standing in the name of an administrator may
        be voted by him, as against those beneficially interested there-
        in.

3. SAME—CONTRACTS—PERSONAL INTEREST OF DIRECTOR—FRAUD.
    A contract between a corporation and one of its stockholders,
        entered into through directors to whom such stockholder has
        assigned part of his stock in nominal amounts in order to
        make them eligible as directors, is, in effect, a contract by the
        stockholder with himself, and, if designed to produce a profit
        for the stockholder, is a fraud on the corporation.

4. SAME— SETTING ASIDE CONTRACT — EQUITY—RESTORATION OF
    BENEFITS.
    Where the board of directors of a mining corporation, with the
        full concurrence of the majority stockholders, agree that one
        stockholder shall expend certain money in the development
        of the mine, and in return therefor shall receive a certain
        amount of treasury stock, and such contract is declared to be
        void, and the transfer of the stock set aside, equity will
        require that the stockholder be reimbursed for all money
        expended by him in good faith, and pursuant to the contract,
        in developing the mine.

5. SAME—LIEN—EXTENT.
    But the lien of such stockholder for the money so expended by
        him should be limited to the stock delivered to him pursuant
        to the contract, and it is improper to give him a lien on the
        mine itself.

6. SAME—EQUITY PRACTICE—ESTATES OF DECEDENTS.
    Decedent, with others, purchased a mining claim, and after
        his death a patent issued to the parties interested, including
        his widow and heirs.  Thereafter the grantees incorporated,
        and the widow, as administratrix, assumed to convey the
        interest of the estate to the corporation, and certain stock was

allotted to her as administratrix in payment therefor. Afterwards the estate was settled, and the administratrix was discharged. *Held*, in a suit by certain of decedent's children to set aside as fraudulent a transfer of other corporate stock by the corporation to a third person, and to determine complainants' rights in the stock, and for other relief, all the parties being before the court, that the court could enter a decree requiring the widow to convey to each of the heirs his proper share in the stock allotted to her as administratrix.

Cross-appeals from Cass; Coolidge, J. Submitted November 20, 1901. Decided December 30, 1901.

Bill by George W. Jones and another against Eli Green and others to set aside a transfer of mining stock, and for other relief. From a decree setting aside the transfer, but giving Green a lien on the mine for moneys advanced, complainants, and defendants Green and the mining company, appeal. Modified.

*Marshall L. Howell*, for complainants.

*Harsen D. Smith*, for defendant Green.

*Lyle & Eby*, for defendant mining company.

HOOKER, J. At some time earlier than June, 1887, one Jesse G. Jones and a number of other persons purchased a mining claim in Colorado. Jesse G. Jones died subsequently, leaving a widow, Elizabeth H. Jones, and four minor children. On June 20, 1887, a patent for the land issued from the federal government to the parties interested, including Elizabeth H. Jones and "the heirs of Jesse G. Jones." On April 3, 1888, the grantees incorporated the Roscoe Conkling Gold Mining Company under the laws of Colorado, with a capital stock of 10,000 shares, of the par value of $10 per share, defendant Eli Green being employed to take the necessary steps to organize the company. Six thousand shares were distributed among the shareholders in consideration of a deed of the mine, which the shareholders joined in making. Elizabeth H. Jones attempted to convey the interest of the

estate of Jesse G. Jones as his administratrix, and shares of stock were allotted to her, as such administratrix, in payment for the deed. Four thousand shares of stock were withheld from sale as a working capital for the new company, and apparently there were no other means provided for the development of the prospective mine. A contract was made between the corporation and Eli Green, wherein he undertook to sell 500 shares of stock at par within a prescribed period, for which service he was to receive 2,000 shares of the stock. Thus the company provided for the sale of 2,500 shares for $5,000, or $2 per share.

The affairs of the corporation did not prosper, and it ran along until 1891, when a difference of opinion as to the policy to be pursued seems to have arisen. As stated, Eli Green, who was an uncle to Elizabeth H. Jones, had been employed to organize the company and negotiate stock, and perhaps to render some service at the mine; and Mrs. Jones, who, in her own right, and as administratrix, had possession of a large quantity of the stock, was desirous that the company should enter into a contract with said Eli Green to develop the mine. Negotiations followed between Green and the board of directors, but they could not agree upon terms, and some of the members of the board had negotiations with others. The matter culminated in a strife for the control of the company's board of directors in 1891, when, by a majority of votes as cast, Mrs. Jones was elected president, and directors friendly to her policy were chosen, and immediately thereafter a board meeting was held, and a written contract was made with Eli Green, by which it was agreed, in substance, that he should expend money in developing the mine to the amount of $4,000, and that in return therefor 2,400 shares of the stock should be delivered to him from the treasury or working stock, the same being deposited with a local banker in Cass county for that purpose. Subsequently, upon an alleged showing that the expenditure had been made, the board caused the shares to be delivered to Eli Green.

The bill in the cause is filed by two of the children of Jesse G. and Elizabeth H. Jones. Eli Green and his wife, Esther, the other two heirs of Jesse G. Jones, the Roscoe Conkling Gold Mining Company, and one George Gard (who was elected secretary of the company in 1891) were made parties defendant. The bill is filed to set aside the transfer of stock to Eli Green, and from him to his wife, Esther, as fraudulent, and for a determination of complainants' rights in the stock, and for other relief. Elizabeth H. Jones and Eli and Esther Green join in an answer, denying generally the claims of the bill. An answer purporting to be filed by the company through its alleged secretary and treasurer was filed. These alleged officers were stockholders who were in sympathy with, and claim to have been elected by, the opposition to Mrs. Jones, at the annual meeting in 1891, and they are apparently in sympathy with the complainants, as their answer indicates.

Upon the hearing it was made to appear that Eli Green and Elizabeth H. Jones colluded to secure control of the board, in order that they might carry out the proposed policy of making the contract mentioned. To accomplish this, she, at the suggestion of Green, pushed a claim in behalf of her husband's estate against one Finney Jones, and finally secured a block of stock held by him in settlement of it, which gave her the necessary majority. Under the advice of Eli Green she was careful to conceal her motive, lest those opposed to her should prevent her from acquiring the stock. He was at the time the president of the concern, and would not sign the new certificate, which Elizabeth, as vice-president, then signed, at Eli Green's suggestion. The letters written by Green to her, of which there are many, show plainly the concert of action between him and her to make the proposed contract. To obtain the necessary stockholders for officers and directors, Green assigned stock in nominal amounts, and the program was fully carried out. The learned circuit judge found this transfer of stock fraudulent, and made a decree setting aside the transfer to Green, but giving him a lien on all

of the property of the company for the sum of $4,000, with interest at 5 per cent. from July 1, 1899, which amount was found to be due to Green. The complainants, Green, and the mining company have appealed.

The record shows that the directors who made the contract were elected by a majority of the stock. It was competent for Mrs. Jones to obtain control of a majority of the stock by purchase, and the validity of the transfer does not depend on her motive or purpose, and, having obtained it, she was entitled to vote it. The stock that complainants claim, was in her name, and, as between herself and other stockholders, she had the right to vote it. Complainants, who were not stockholders, had no power in the premises. The election of the directors was valid.

It appears that the holders of a majority of the stock approved the proposed contract with Eli Green, as the minority stockholders well knew. The directors were elected with the understanding on the part of all that they would carry out the wishes of the majority. The court found that a fraud was attempted upon the part of Green, and he may have taken the view that a contract made through directors who held Green's stock was a contract made by Green with himself, and, if designed to produce a profit, was a fraud upon the company; and we think this is the rule. He was to receive $24,000 worth of stock on a basis of the par value for $4,000 in money. We do not feel confident that this stock was worth $4,000, but it is not important here. All of the stockholders wanted the mine developed. The minority attempted to elect a board, and an attempt was made to make a contract with another; but this was unauthorized, and not binding upon the company. The only lawful board assumed to make a contract for the company. This was with full concurrence of the holders of a majority of the stock. If, under that contract, Green in good faith expended $4,000 for the benefit of the company, in accordance with the contract, in the development of the mine, there would seem to be

no reason why equity does not require that he be reimbursed. It is impossible to determine satisfactorily whether this amount was so expended. He testified that it was, and there is no tangible and convincing proof to the contrary. We might perhaps infer that the money could have been spent more judiciously, but that is not clear. The trial judge, who saw the witnesses, seems to have believed that such expenditure was made, and we do not feel justified in holding otherwise.

It is contended that the court erred in making the sum found due Green a lien upon the mine, and providing for a sale of the same in case his claim should not be paid. We are of the opinion that the defendant Green should be limited in his lien to the 2,400 shares. They have already been delivered to him. A majority of the stockholders, who have been willing to contract on the basis of 2,400 shares, are willing that he should have them, and, as against them, he is not equitably entitled to more; while, as to the minority, he has been limited to a recovery of the amount expended, which they assert to be less than the value of 2,400 shares. We see no reason for his being entitled to more than his contract price, even if the 2,400 shares are worth less, and even against those who question the validity of his contract.

The stock which Mrs. Jones received for and on behalf of her husband's estate, whether received in payment for his interest in the land or from Finney Jones in satisfaction of the debt due the estate, should be treated as property held in trust for herself and the heirs. The record shows that the estate has been settled, and that she has been discharged as administratrix, so that it may be assumed that creditors have no interest in this stock. As all the parties are before the court, the only minor being represented by guardian *ad litem*, this court may properly adjust the rights of all in this decree by requiring that Elizabeth H. Jones convey to each his proper share of the stock.

A decree may be taken adjudging that the stock issued

in pursuance of the contract be surrendered for cancellation upon payment by the company, or upon its behalf, of the sum of $4,000, with interest thereon at 5 per cent. from July 1, 1899, to the said Eli Green, within the period of six months after settlement and notice of the decree herein provided for, otherwise the same to be and remain the property of said Eli Green; that the stock issued to said Elizabeth H. Jones, as administratrix, is held by her in trust for herself and the four children of herself and Jesse G. Jones, and that she assign by apt and proper writing to each his or her proportionate share; the same to be settled at the time of settling the decree in this cause, or by a reference, if the same shall then be found necessary, unless the parties can agree thereto. The complainants will recover costs of both courts against Eli Green, Esther Green, and Elizabeth H. Jones.

MONTGOMERY, C. J., MOORE and GRANT, JJ., concurred. LONG, J., took no part in the decision.