Ellery A. Boss *vs.* Walter Russell Boss, Jr. *et al.*

MAY 8, 1964.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

CONDON, C. J. This is a stockholder's amended bill in equity for an injunction and other relief against the A. T. Cross Pencil Company, hereinafter referred to as the corporation, and certain officers, directors and other stockholders thereof. The cause was heard in the superior court on the respondents' plea and answer, which the trial justice found insufficient as a defense and thereupon entered a decree granting the relief prayed for in the bill. From such decree the respondents have appealed to this court.

The complainant Ellery A. Boss is the president and one of three directors of the corporation and is the holder of 3 shares of its stock. The respondent Walter Russell Boss, Jr. is a director, secretary and treasurer and the holder of 2 shares. The respondent Ethel R. Boss is the mother of Walter and the stepmother of Ellery. She is the life tenant of 60 shares with "full use and control" thereof during her life in accordance with a bequest in the will of her late husband Walter R. Boss, father of Walter R. Jr. and Ellery. Such bequest provided that upon the decease of Ethel the 60 shares were to be divided equally between the testator's sons or if they were deceased to their children per stirpes and not per capita. The respondent George W. Brown was the holder of 6 shares. These holdings of 71 shares comprised the total stock of the corporation issued and outstanding at the time a controversy arose between the Boss stockholders over the corporation's opportunity to purchase 4 shares of the George W. Brown stock which was rejected by the votes of respondents at a stockholders' meeting.

The corporate charter provides that, "No stockholder shall sell any stock owned by him until he has first offered in writing to the corporation the right to purchase said stock at the lowest price at which he is willing to sell the same, and after said stock has been offered to said corporation it

may purchase the same if it sees fit, but must exercise said right to purchase within one month from the time said offer is given. Otherwise said owner may sell said stock to any other parties." On March 13, 1960 Brown offered to sell 4 of his shares to the corporation. In the early part of April 1960, while this offer was pending and before it had been acted upon by the corporation, Walter Russell Boss, Jr. personally purchased such shares. At a meeting of the board of directors on June 14, 1960 the following resolution was proposed: "That the offer of George W. Brown dated March 13, 1960, to sell to the company four (4) shares of the capital stock of the company owned by him at a price of $10,566. per share, to the extent that such offer is still outstanding, be and the same is hereby refused and rejected; and that the corporation hereby waives any and all rights it may have had or now has in, or to acquire, said shares." At such meeting Ellery voted against and Ethel voted for the resolution. Walter did not vote. Thereupon an identical resolution was proposed at a meeting of the stockholders and adopted by a vote of 64 shares in favor thereof and 3 shares in opposition voted by Ellery. The 4 shares in controversy were not voted pursuant to a restraining order of the superior court.

The foregoing facts appear from the allegations in the bill of complaint and the respondents' plea. There is no transcript of testimony in the record since the trial justice rendered his decision upon which the decree appealed from is based solely on the pleadings. It appears from such decision that he concluded Ethel and Walter had unlawfully planned by means of the directors' and stockholders' meetings to deprive the corporation of its pre-emptive right to purchase the offered Brown shares in order to serve their own personal interests, namely, the acquisition of control of the corporation by them during the life of Ethel and thereafter by Walter. This purchase when challenged in a court of equity, the trial justice declared, "must be

stamped as a purchase made in the interest of the corporation and subject to its right to purchase."

In accordance with that view he decreed that "respondent, Walter Russell Boss, Jr., shall tender to the respondent, A. T. Cross Pencil Company, the four (4) shares of the capital stock of said respondent corporation (described in paragraph 'Twelfth' of said amended bill of complaint), and said respondent, A. T. Cross Pencil Company, shall reimburse said respondent, Walter Russell Boss, Jr., for the amount paid by said respondent to George W. Brown for said stock; and thereupon the respondent corporation shall acquire said stock and make the appropriate entries on the stock transfer records of said corporation accordingly."

In their reasons of appeal respondents assert that the decision and decree are against the law; that each is erroneous in finding that respondents' votes at the stockholders' meeting to reject the offer of the Brown stock were wrongful and against the interest of the corporation; that the purchase by Walter R. Boss, Jr. was subject to the corporation's right to purchase; and that the corporation must purchase such stock. They also assert that the decree is erroneous in ordering Walter to tender the stock to the corporation and in ordering the corporation to purchase it.

Under their plea respondents contend that the question whether the corporation should acquire the Brown shares was a question of corporate policy for the stockholders to decide and that their action thereon could not, in the absence of fraud or other unlawful conduct, be overruled by the courts. In opposition to this view complainant contends that the pre-emptive right of the corporation to purchase the offered shares was a corporate opportunity which the respondent stockholders in the peculiar circumstances of this case could not reject without violating a fiduciary obligation which they owed to the corporation and their fellow stockholders.

It appears from the trial justice's decision that he substantially adopted complainant's view. He expressly states that he "is of the opinion that the right to purchase the stock was an available right in the corporation; that this right arose upon the offer being made to the corporation; that the plan of the respondents to hold a directors' meeting and stockholders' meeting and at each to reject the offer so as to clear the way for the purchase by the respondent Russell was an act in conflict with the interest of the corporation, their principal."

Having thus declared the prior right of the corporation to acquire the stock he proceeded to invalidate the action of the stockholders' meeting for the following reason: "Whatever the rule may be with respect to the rights of the stockholders to act in their own interest, though that be adverse to that of the corporation, it cannot be said that the directors have the right to prefer their own interest to that of the corporation. When these directors planned this arrangement to reject the stockholders' offer to the corporation, and arrange for the purchase of the stock by one of themselves, the purchase of which would give him and his mother the control of the corporation during her life, and thereafter to respondent Walter, it is inevitable that such purchase when challenged in Court must be stamped as a purchase made in the interest of the corporation and subject to its right to purchase."

The difficulty with this reasoning is that it is predicated upon the fiduciary obligation of directors to the corporation whereas the action under review here which resulted in the rejection of the offer of the Brown shares was that of the stockholders. There was no decision by the directors, although one was attempted. Another difficulty is that the trial justice has apparently misconceived the result that would presently flow from the acquisition of the Brown stock by Walter. Such stock was not needed to give him

and his mother control of the corporation during her lifetime. She already possessed such control by reason of the full power with which she was endowed over 60 of the 71 shares issued and outstanding.

What the trial justice's decision does is to usurp the undoubted right of the stockholders to determine whether as a matter of corporate policy the corporation should expend a substantial amount of its funds to purchase the Brown stock. He has not only declared that it could not be lawfully acquired by respondent Walter Boss but has decreed that respondent corporation *must* buy such stock, and this solely at the behest of a minority stockholder holding but 3 out of 71 shares of the corporation stock issued and outstanding.

On the undisputed facts alleged in the pleadings we are of the opinion that the decree is erroneous and must be reversed. We base our opinion solely on the ground that a majority of the stockholders at a duly called meeting have expressly voted to reject the offer to buy the Brown shares. This they had a lawful right to do. Whether the opportunity to purchase such shares should be availed of in the interest of the corporation was a question of corporate policy the determination of which rested solely with them. The fact that their rejection of such opportunity would make it possible for one of their number to acquire the offered shares was of no consequence to the corporation as far as its interests were concerned. The law on this point seems to be clear and without serious dispute.

In a situation similar to, though not identical with, the one in the case at bar it was held that "exercising its power to buy was, after all, one of those business questions of corporate policy which the stockholders, through their majority, and not a court, through its equitable power, should decide." *Du Pont* v. *Du Pont*, 256 Fed. 129, 175. In that case the court also held the fact that the buyers of the stock in question were officers of the corporation "did not, per se,

qualify or take away the right officers of any company have to buy, in large or small quantity, its stock."

Such disability, the court said, "must be found, if it exists, in the fact that they made some wrongful use of their position or influence as officers, or such wrongful use of the money, property, or credit of the company, as made it inequitable for them to acquire and hold stock which the company should hold or wished to buy for itself * * *." On the face of the instant pleadings none of these conditions exists. Indeed the contrary appears therefrom. No wrongful use of money, property or credit of the company is alleged in the bill, nor is it disputed therein that at a duly called meeting the stockholders refused to buy the offered stock. The gist of complainant's contentions seems to be that respondents Walter Boss and Ethel Boss being officers and directors could not lawfully vote in such meeting to reject the offer and that for the same reason neither could validly purchase the offered stock.

We find no support in the decided cases for such a view. It is true that a director represents all the stockholders and in the exercise of his office as director stands in a fiduciary relation to them which prevents him from using his office for his personal benefit at their expense, but when voting as a stockholder he "has the legal right to vote with a view to his own benefit * * *." 13 Am. Jur., Corporations, §997, 1963 Supp. p. 117, citing *Zahn* v. *Transamerica Corp.*, 162 F.2d 36 (3rd CCA, Del.). See also *Kirwan* v. *Parkway Distillery, Inc.*, 285 Ky. 605. Nor can the motive or purpose for which the stock was purchased adversely affect such purchase. *Jones* v. *Green*, 129 Mich. 203; *Carlson* v. *Ringgold County Mutual Telephone Co.*, 252 Iowa 748; *Guaranty Laundry Co.* v. *Pulliam*, 198 Okla. 667. And in *Securities & Exchange Comm'n* v. *Chenery Corp.*, 318 U. S. 80, 88, the court in the course of its ratio decidendi stated, "the courts do not impose upon officers and directors of a corporation any fiduciary duty to its stockholders which

precludes them, merely because they are officers and directors, from buying and selling the corporation's stock."

The decree in the case at bar must be reversed if for no other reason than that it enables a minority stockholder in effect to veto the orderly administration of a corporation's affairs by the duly functioning majority. Unless the action taken by the stockholders at the regularly authorized meeting thereof is null and void the respondent corporation has conclusively expressed its will not to buy the Brown shares. In our opinion there is nothing on the face of the pleadings that would warrant holding such action void.

The decree of the superior court in effect restrains the majority stockholders from exercising their lawful authority to decide a plain matter of corporate policy concerning which courts lack the authority to interfere. In *Kentucky Package Store, Inc.* v. *Checani*, 331 Mass. 125, 129, a controversy having some aspects akin to those in the case at bar arose and the court said: "The holders of a minority stock interest cannot be permitted to restrain those holding a majority of the shares from exercising their rights to vote because their votes would be adverse to the views of the minority." In so holding the court relied on and quoted its own language in *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499, 509, to the effect that a stockholder cannot be deprived of his voting rights because he proposes to exercise them " 'for purposes which others may think to be detrimental to the interests of the corporation.' "

On our view of the applicable law the respondents' plea should have been sustained. Such action would have rendered unnecessary any consideration of the issues raised by the respondents' answer. Therefore the trial justice erred in entering the instant decree on the pleadings in favor of the complainant.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior

court with direction to enter a new decree denying and dismissing the bill.

*Sidney L. Rabinowitz, Edwards & Angell, William H. Edwards,* for complainant.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring, Edward M. Watson,* for respondents Walter Russell Boss, Jr., Ethel R. Boss, and A. T. Cross Pencil Company.