**NATIONAL CREDIT UNION ADMINIS-TRATION BOARD, as Conservator of Fairlawn Credit Union**

v.

**Anthony J. REGINE, Henry V. Rosciti, Anthony F. Rosciti, Michael A. Cinquegrano, Providence Marine Realty, Inc., and Barge In, Inc.**

**Civ. A. No. 89–0688 L.**

United States District Court,
D. Rhode Island.

Oct. 22, 1990.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the separate motions to dismiss of defendant Regine and defendants Henry V. Rosciti, Anthony F. Rosciti, Michael A. Cinquegrano, Providence Marine Realty, Inc. and Barge In, Inc. Failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6), failure to satisfy the strictures of Fed.R.Civ.P. 9(b), and lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) are the rationales supporting the instant motions.

This action was initiated by the National Credit Union Administration Board (NCUA), a federal agency, as conservator for the Fairlawn Credit Union (Fairlawn). The case is essentially one for fraud in which plaintiff alleges that the four individual defendants engaged in a scheme to defraud Fairlawn, a federally insured financial institution, by purchasing real property from the credit union at less than fair market value, concealing the interest of an officer and director (defendant Anthony Regine) in the transaction and then using the real estate to obtain a loan in an amount exceeding the purchase price of the land.

NCUA has brought suit against all the individual defendants for fraud, for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and for violation of RICO's Rhode Island counterpart, R.I.Gen.Laws § 7–15–1 *et seq.* Plaintiff also alleges state law claims against all defendants for breach of contract and against defendant Regine for negligence, recklessness and breach of fiduciary duties. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1345, 12 U.S.C. § 1789(a)(2), 28 U.S.C. § 1331, and 18 U.S.C. § 1964(c).

## BACKGROUND

The facts in this case, as alleged by NCUA in its Amended Complaint, are as follows. NCUA became conservator of Fairlawn on November 15, 1989, and has continued to act as conservator since that date. Fairlawn is the successor in interest of Co-op Credit Union which merged with Fairlawn on March 17, 1988. In March 1987, defendant Regine was a director of Co-op and of Co-op's subsidiary, Park Place Holding Co., Inc. Between March 1987 and March 1988, Regine also served as vice-president of Park Place Holding, acting chairman of the board of directors of Co-op, director of Park Place Holding's subsidiary, Park Realty, Inc., president of Co-op and president of Park Realty. From March 17, 1988, to November 15, 1989, Regine served as a paid advisor to Fairlawn's board of directors.

During the time that Regine was an officer and director of Co-op and its subsidiaries, he and the other defendants were associated in various ways. Regine and defendant Anthony Rosciti are and were business partners in Barge In, Inc. and Providence Marine Realty, Inc. Anthony Rosci-

ti's brother, defendant Henry Rosciti, was also active in Providence Marine. Defendant Michael Cinquegrano is and was employed by Rosciti Construction, Inc., the president of which is Henry Rosciti.

The piece of property which is at the center of the dispute in this case is identified as Plat 14, Lot 10 on Moosehorn Road in East Greenwich, Rhode Island (the Moosehorn property). Co-op obtained this parcel of real estate by foreclosure in July of 1980 and subsequently conveyed it to Park Place Holding in November of 1985. Park Place Holding received at least three offers to purchase the Moosehorn property, at prices ranging from $350,000.00 to $460,-000.00. On March 9, 1987, however, allegedly on Regine's motion, the Board of Directors of Park Place Holding rejected those offers and instead conveyed the property to Park Realty. On August 31, 1987, Park Realty conveyed the property back to Co-op which in turn sold it to defendants Cinquegrano and Anthony Rosciti for $340,000.00—a figure that plaintiff alleges was substantially less than the fair market value of the property at the time.

Approximately five months later, on February 8, 1988, Henry Rosciti, without furnishing any consideration, was substituted for Anthony Rosciti as an owner of the Moosehorn property. On the same day, Cinquegrano and Henry Rosciti used the property to obtain $485,000.00 in loan proceeds from Co-op, giving Co-op a mortgage on the real estate.

On March 24, 1989, Regine became co-owner, with Cinquegrano and Henry Rosciti, of the Moosehorn property. Regine furnished no consideration for this one-third ownership interest. Regine, Cinquegrano and Henry Rosciti still own the Moosehorn property. Cinquegrano and Henry Rosciti have been in default on their Moosehorn mortgage payments since May, 1989. Presently, with interest and other charges, plaintiff alleges that they owe Fairlawn more than the amount of the mortgage.

Turning to a history of the instant litigation, NCUA initially filed a seven count complaint alleging fraud against all the individual defendants, breach of fiduciary obligations against defendant Regine and breach of contract against all defendants. At that time, plaintiff asserted "agency" jurisdiction pursuant to 28 U.S.C. § 1345 and 12 U.S.C. § 1789(a)(2). On February 5, 1990, defendant Regine moved to dismiss the case for lack of subject matter jurisdiction. On February 13, 1990, plaintiff filed an Amended Complaint which added claims for violations of RICO, 18 U.S.C. § 1961 *et seq.*, RICO's state equivalent, R.I.Gen. Laws § 7–15–1 *et seq.*, and for negligence. After inserting the federal RICO claim, plaintiff also asserted federal question jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

On March 1, 1990, defendants moved to dismiss the Amended Complaint on a number of grounds. First, all defendants moved to dismiss the state and federal RICO claims and the state law fraud claim for failure to state a claim for which relief could be granted, under Fed.R.Civ.P. 12(b)(6), and for failure to plead fraud with specificity as required by Fed.R.Civ.P. 9(b). Defendant Regine moved to dismiss the count alleging breach of fiduciary duties on the same grounds. Finally, all defendants moved to dismiss the remaining claims for lack of subject matter jurisdiction, under Fed.R.Civ.P. 12(b)(1).

After having heard arguments on the motions of all defendants, the Court took the matter under advisement. The motions are now in order for decision.

## DISCUSSION

### I. RICO

The federal RICO statute provides that "[a]ny person injured in his business or property by reason of a violation" of the prohibitions on racketeering in 18 U.S.C. § 1962 may recover treble damages plus litigation costs and attorneys' fees. 18 U.S.C. § 1964(c). In this case, plaintiff's Amended Complaint alleges violations of all four of the activities prohibited in § 1962 which renders criminally and civilly liable "any person" who (a) uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or

to operate an enterprise engaged in interstate commerce; (b) acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity;" (c), being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity;" or, finally, one who (d) conspires to violate the first three subsections.

Subsection 1961(1)(B) defines an act of "racketeering activity" to include any act indictable under one of numerous federal criminal provisions, including the money laundering statute, 18 U.S.C. § 1956(a), and the statutes prohibiting mail and interstate wire fraud, 18 U.S.C. §§ 1341 and 1343. Plaintiff alleges that the actions of all the individual defendants are indictable under 18 U.S.C. § 1956(a) in that the defendants engaged in financial transactions knowing that the property involved represented the proceeds of activity proscribed by 18 U.S.C. §§ 657, 666, 1344, 2113(b), and knowing that the transactions were designed to conceal or disguise the nature, source, ownership, or control of said proceeds. Plaintiff also states in its Amended Complaint that, on information and belief, the defendants used the United States mails and interstate wire communications in order to carry out their fraudulent scheme.

### A. Predicate Acts

■ Defendants contend that plaintiff's Amended Complaint fails to identify any cognizable wire fraud, mail fraud, or money laundering predicate acts, thereby mandating summary dismissal of the RICO count. In *New England Data Services, Inc., v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987), the First Circuit held that although Rule 9(b) requires specificity in the pleading of RICO mail and wire fraud, dismissal is not necessarily required where the complaint fails to allege the exact details of just when and where the mail or wires were used. There, the plaintiff set out a general scheme to defraud and established an inference that the mails or wires were used to carry out the scheme. *Id.* at 291. Recognizing that, in this day and age, it is difficult to perceive how the defendants would have communicated without the use of the mails or interstate wires, the Court concluded that it would be unreasonable to dismiss the RICO claim without allowing additional discovery. *Id.* The Court also noted, however, that the plaintiff in *Becher* was not directly involved in the alleged fraudulent transaction. *Id.* It is significant that the multiple defendants were not all residents of the same state, thereby increasing the likelihood of communication by mail or interstate wire.

In the case *sub judice*, all the individual defendants and Fairlawn are residents of the state of Rhode Island. Because the defendants were business associates who had offices at the same location and resided in the same state, it is possible that the alleged fraud could have been carried out without the use of the mails or interstate wires. In addition, Fairlawn (or its predecessor Co-op Credit Union) was involved in at least some of the allegedly fraudulent transactions engaged in by defendants, making it difficult for this Court to understand why plaintiff is unable to cite even one specific instance of mail or wire fraud in its Amended Complaint. Because plaintiff has alleged a general scheme to defraud, however, the Court is unwilling to dismiss the RICO claim for failure to specify the specific acts of mail or wire fraud without allowing plaintiff some discovery on the issue.

The identification of more than two predicate acts that constitute racketeering activity is just the beginning of the analysis of the sufficiency of the RICO claim. The subsections of 1962 all require that each prohibited activity include proof of either a "pattern of racketeering activity" or "collection of an unlawful debt." It is to the nebulous "pattern" requirement that the Court now turns its attention.

### B. The Pattern Requirement

■ Subsection 1961(5) of title 18 states that a *pattern* of racketeering activity "requires at least two acts of racketeering activity...." As recently observed by the First Circuit in *Fleet Credit Corp. v. Sion*,

893 F.2d 441, 444 (1st Cir.1990), "[t]he use of the word 'requires'—as opposed to 'means'—in § 1961(5) indicates that alleging two acts of mail fraud (or two or more other statutorily defined predicate acts) is necessary but not sufficient to establish a pattern of racketeering activity." In an attempt to clarify the meaning of the pattern requirement the Supreme Court quoted from the Congressional record:

> " 'The term "pattern" itself requires the showing of a relationship' between the predicates, and of 'the threat of continuing activity.' 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' " (citations omitted)

*H.J. Inc. v. Northwestern Bell Telephone Company*, —— U.S. ——, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). In *H.J.*, the Court concluded that Congress intended that, in order to prove a pattern of racketeering activity, a plaintiff or prosecutor "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* 109 S.Ct. at 2900. Thus, following the standard set by the Supreme Court, this Court must look closely at the predicate acts alleged by NCUA to determine (1) whether the acts are related; and (2) whether they could be found to amount to or pose a threat of continued criminal activity.

### 1. Relatedness

A plaintiff establishes that predicate acts are related by demonstrating that they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J.*, 109 S.Ct. at 2901 (quoting the Dangerous Social Offender Sentencing Act, 18 U.S.C. § 3575(e)). Here, the fraudulent acts alleged by NCUA are clearly related because they were all part of the same fraudulent scheme. *See id.* at 2906 (plaintiffs satisfy the relatedness requirement because the "acts of bribery alleged are said to be related to a common purpose, to influence Commissioners in carrying out their duties in order to

win approval of unfairly and unreasonably high rates for Northwestern Bell").

### 2. Continued Criminal Activity

The standard adopted by the Court in *H.J.* provided new guidance for lower courts in defining a "pattern" of racketeering activity. Prior to *H.J.*, the First Circuit had implicitly adopted a multi-factor, fact-intensive balancing test for determining whether a set of alleged predicate acts were continuous. *Fleet v. Sion*, 893 F.2d at 445. *See also Roeder v. Alpha Industries, Inc.*, 814 F.2d 22 (1st Cir.1987). In *Roeder*, the Court approvingly cited *Morgan v. Bank of Waukegan*, which presented the following test for determining whether a number of acts constitute "separate criminal transactions," thus establishing continuity:

> Relevant factors include 1) the number [of predicate acts]; 2) the variety of predicate acts; 3) the length of time over which they were committed; 4) the number of victims; 5) the presence of separate schemes; and 6) the occurrence of distinct injuries.

*See Fleet v. Sion*, 893 F.2d at 446 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986) (numbers added)).

As noted by the First Circuit in *Fleet v. Sion*, the teachings of *H.J.* are not precisely the same as those of *Roeder* and *Morgan*. *Id.* The Supreme Court stated in *H.J.* that to establish continuity, a plaintiff must demonstrate that the related predicate acts "amount to or pose a threat of continued criminal activity." *Id.* (citing *H.J.*, 109 S.Ct. at 2900). This formulation provides a bifurcated framework for determining continuity in a RICO claim. *Id.* A party *may* establish continuity by demonstrating that the predicate acts amount to continued criminal activity. Alternatively, a party may establish continuity by demonstrating that the predicate acts, though not continuous, *threaten* to become so. *Id.*

Before attempting to analyze whether the predicate acts alleged in the instant case amount to or pose a threat of continued criminal activity, it is necessary to outline the specific predicate acts alleged by plaintiff. The allegations in the Amended

Complaint identify four transactions which appear to be at the heart of plaintiff's fraud claim: 1) Co-op's sale of the Moosehorn property to Anthony Rosciti and Michael Cinquegrano for $340,000; 2) the conveyance of the Moosehorn property from Cinquegrano and Anthony Rosciti to Cinquegrano and Henry Rosciti for no consideration; 3) the $485,000 loan from Co-op to Cinquegrano and Henry Rosciti, secured by a mortgage on the Moosehorn property; and 4) the conveyance of the Moosehorn property from Cinquegrano and Henry Rosciti to Cinquegrano, Henry Rosciti and Regine for no consideration. It is important to note that acts of common law fraud that do not implicate the mails (or the wires) do not constitute "racketeering activity" under the definition found within the RICO statute. *See Fleet v. Sion*, 893 F.2d at 445. These allegedly fraudulent transactions, therefore, constitute predicate acts in and of themselves only as violations of 18 U.S.C. § 1956(a). In any event, these acts certainly do not amount to, or pose a threat of, continuing criminal activity.

Predicate acts amount to continued criminal activity when they form a "closed period of repeated conduct," which the Supreme Court defined in *H.J.* as follows:

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.

*H.J.*, 109 S.Ct. at 2902. In *H.J.*, the Court applied this standard to the defendant telephone company's alleged scheme to bribe members of a public commission in order to secure higher phone rates. There the Court found that "the racketeering predicates [the bribes] occurred with some frequency over at least a 6–year period, which may be sufficient to satisfy the continuity requirement." *Id.* at 2906. Similarly, in *Fleet v. Sion*, 893 F.2d at 447, the Court found that plaintiff's allegations of 95 fraudulent mailings over a four and one-half year period represented "the type of

'long-term criminal conduct' defined by the *H.J.* court as constituting 'continued criminal activity.'" In reaching its decision, however, the Court in *Fleet* recognized that

[h]ad the number of acts alleged by Fleet been few or the period of time short, the predicate acts would not have amounted to continued criminal activity.... Too few acts would suggest that the defendants were engaged in only 'sporadic activity,' [quoting *H.J.* 109 S.Ct. at 2900], and too short a period of time would suggest that defendants were not engaged in 'long-term criminal conduct.' [quoting *H.J.* 109 S.Ct. at 2902].

*Id.*

In the case *sub judice*, the allegations of one fraudulent scheme consisting of four transactions occurring over less than a two year period are far from sufficient to establish the continuity required by the *H.J.* standard. In *Roeder*, 814 F.2d at 22, the First Circuit found that a single bribe paid in three installments did not establish continuity. In *Parcoil Corp. v. Nowsco Well Service*, 887 F.2d 502 (4th Cir.1989), the Fourth Circuit held that seventeen falsified reports sent over a period of four months did not establish continuity. Here, the fact that the small number of predicate acts occurred over an approximately nineteen month time period emphasizes the sporadic nature of defendants' actions. Such isolated incidents do not represent the type of "long-term criminal conduct" contemplated by the Supreme Court's decision in *H.J.*

Plaintiff's allegations also fail to establish a threat of continued criminal activity. In *H.J.*, the Court held that predicate acts pose a threat of continued criminal activity when they constitute "past conduct that by its nature projects into the future with a threat of repetition." 109 S.Ct. at 2902. A plaintiff may demonstrate such a threat by showing that "the predicate acts are a regular way of conducting a defendant's ongoing business." *Id.* Plaintiff's Amended Complaint does not allege or even suggest that the predicate acts engaged in by defendants (namely, bank fraud) constitute defendants' manner of doing business or will be repeated in the

future. Furthermore, plaintiff indicated, in its memorandum in support of its objection to the motions to dismiss, that it alleges continuity over a closed period and does not allege any threat of continued criminal activity.

■ The individual defendants in this case may well have engaged in a fraudulent scheme to purchase the Moosehorn property at less than fair market value and then obtain loans from the Co-op Credit Union secured by that property. However, these allegations, even if true, do not fall within the parameters of the RICO statute. Quite simply, this case is one for breach of contract and common law fraud. For the reasons delineated above, the Court finds that plaintiff has failed to state a claim for which relief may be granted under the federal RICO statute. Count X of the Amended Complaint is, therefore, dismissed.

## II. SUBJECT MATTER JURISDICTION

### A. *Jurisdiction under 28 U.S.C. § 1345*

In the absence of the federal RICO claim, plaintiff asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1345 and 12 U.S.C. § 1789(a)(2).

Section 1345 provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345. Because NCUA is clearly an agency of the federal government,[1] jurisdiction is conferred by this statute for all suits the agency commences. NCUA is also expressly authorized to sue in federal district court pursuant to the Federal Credit Union Act; specifically, 12 U.S.C. § 1789(a)(2).

The issue before the Court is whether or not NCUA is entitled to assert agency jur-

isdiction pursuant to the general grant under 28 U.S.C. § 1345, in light of the fact that Congress has "otherwise provided" for federal jurisdiction under § 1789(a)(2). Although no court has specifically considered whether § 1789 provides the only basis upon which NCUA may assert federal jurisdiction, the Supreme Court recently decided a similar issue with respect to the Federal Savings and Loan Insurance Corporation (FSLIC). *See Federal Savings and Loan Insurance Corporation v. Ticktin*, 490 U.S. 82, 109 S.Ct. 1626, 104 L.Ed.2d 73 (1989). In *Ticktin*, FSLIC, in its capacity as receiver of a state-chartered savings and loan association, brought suit in Federal District Court against former directors of the savings and loan, claiming damages for breach of their fiduciary duties under state law. The District Court held that it had jurisdiction of the case pursuant to § 1345. After certifying the jurisdictional question for interlocutory appeal, however, the Seventh Circuit reversed, concluding, first, that FSLIC's jurisdictional statute, 12 U.S.C. § 1730(k)(1), controlled jurisdiction, and, second, that a proviso in the statute withdrew federal jurisdiction in this particular category of cases. The Supreme Court granted certiorari to determine whether there was federal agency jurisdiction under § 1345, expressing its concern that the Circuit Court's ruling, "if correct, will require the dismissal of a large number of cases concerning the integrity of our financial institutions." *Id.* 109 S.Ct. at 1627.

The issue, as in the case *sub judice*, was whether 12 U.S.C. § 1730(k)(1) "otherwise provided" for federal jurisdiction in cases involving FSLIC, thereby eliminating general agency jurisdiction under § 1345. The Supreme Court found that § 1730(k)(1), rather than cancelling out § 1345, actually confirms and enlarges federal jurisdiction over cases to which FSLIC is a party. *Id.* at 1628. The relevant portion of the statute provides:

---

1. *See* 12 U.S.C. § 1752a which provides:
   There is established in the executive branch of the Government an independent agency to be known as the National Credit Union Adminis-

   tration. The Administration shall be under the management of a National Credit Union Administration Board.

... (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided,* That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States....

12 U.S.C. § 1730(k)(1). The Court reasoned that "clause (B) enlarges the category of FSLIC litigation over which federal courts have jurisdiction because it covers all civil cases in which the FSLIC 'shall be a party,' whereas § 1345 applies only to those 'commenced' by the FSLIC." *Id.* at 1628. The proviso works to limit the broad grant of federal jurisdiction set forth in clauses (B) and (C) of the statute by describing a subcategory of cases to which FSLIC is a party that "shall not be deemed to arise under the laws of the United States." *Id.* at 1628. The proviso has no effect, however, on suits *commenced* by the agency, which receive jurisdiction under § 1345.

The statute granting federal jurisdiction to NCUA is virtually identical to § 1730(k)(1). Section 1789(a)(2) provides:

(a) In carrying out the purposes of this subchapter, the Board may—

(2) sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Board shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy. The Board may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, except that any such suit to which the Board is a party in its capacity as liquidating agent of a State-chartered credit union and which involves only the rights or obligations of members, creditors, and such State credit union under State law shall not be deemed to arise under the laws of the United States ...

The Supreme Court's holding that clause (B) of § 1730(k)(1) enlarges the category of FSLIC litigation over which federal courts have jurisdiction indicates that the analogous language of § 1789(a)(2) should also be interpreted as an extension of the jurisdiction provided under § 1345.

Defendants point out that in *Federal Deposit Insurance Corporation v. Sumner Financial Corporation,* 602 F.2d 670 (5th Cir.1979), the Fifth Circuit determined that the grant of federal jurisdiction and the qualifying proviso of 12 U.S.C. § 1819 (Fourth) should be read as setting out the complete scheme for federal jurisdiction over cases in which the Federal Deposit Insurance Corporation (FDIC) is a party.[2]

**2.** Prior to its amendment in 1989, § 1819 (Fourth) provided, in pertinent part:

Upon the date of enactment of the Banking [Act of 1933], the Corporation shall become a body corporate and as such shall have power—

.   .   .   .   .

Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or

Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State

Thus the Court concluded that the limitation on federal jurisdiction stated in the proviso in that statute could not be evaded by predicating jurisdiction on § 1345.

In 1989, however, Congress amended § 1819, adding a specific provision stating that the Federal Deposit Insurance Corporation "in any capacity shall be an agency of the United States for purposes of section 1345 of Title 28, without regard to whether the Corporation commenced the action." 12 U.S.C. § 1819(b)(1). A similar clause is included in the FSLIC statute, § 1730(k)(1), clause A.[3] The amendment clearly suggests that Congress intended § 1819 (Fourth), now § 1819(b)(2), to expand rather than limit the grant of jurisdiction in cases in which FDIC was a party. This conclusion is also consistent with the holding of the Supreme Court in *Ticktin.* Furthermore, in light of *Ticktin,* the Fifth Circuit has recently questioned its conclusions in *Sumner. See In the Matter of Meyerland Co.,* 910 F.2d 1257 (5th Cir. 1990), (where the Court upheld FDIC's power, under § 1819(b)(2), to remove a proceeding which was pending appeal in the state court).

■ Following the guidance of the Supreme Court in *Ticktin* in the instant case, this Court finds that the lack of an express provision stating that NCUA shall be deemed to be an agency of the United States does not mandate the conclusion that Congress intended to eliminate the broad grant of federal agency jurisdiction included in § 1345. Section 1789(a)(2), therefore, is not an Act of Congress that has "otherwise provided" a limitation on the jurisdictional grant in § 1345. Accordingly, this District Court has federal agency jurisdiction over the NCUA's action.

B. *Jurisdiction under 12 U.S.C. § 1789(a)(2)*

■ Were the Court to rely exclusively on the Federal Credit Union Act for jurisdiction, this statute would also provide an adequate basis for federal jurisdiction in this case. Section 1789(a)(2) grants federal jurisdiction to *all* civil suits to which NCUA is a party, except suits "to which the Board is a party in its capacity as liquidating agent of a State-chartered credit union and which involve only the rights or obligations of members, creditors, and such State credit union under State law shall not be deemed to arise under the laws of the United States."

Although plaintiff maintains, based on a strict parsing of the statute, that this exception should be applied to removal cases only, this analysis has not found significant support in our nation's courts. In analyzing the similar proviso clause in § 1730(k)(1), the Supreme Court, in *Federal Savings and Loan Insurance Corporation v. Ticktin,* makes clear that the application of the proviso is not limited to removal cases, but extends to all cases in which FSLIC is a party: "Clause (B) provides federal question jurisdiction in any case in which the FSLIC is a party and the proviso limits this grant." 109 S.Ct. 1626, 1629 (1989). Likewise, in *Federal Deposit Insurance Corporation v. Sumner Financial Corporation,* the Court of Appeals for the Fifth Circuit construed the similar proviso clause in 12 U.S.C. § 1819 (Fourth) based on legislative history, and concluded, ". . . it is clear from its history that the proviso in 1819 (Fourth) qualifies the grant of original federal question jurisdiction contained therein as well as the provision concerning removal." 602 F.2d 670, 675 (5th Cir.1979). *See also Federal Deposit Insurance Corporation v. Ashley,* 585 F.2d 157 (6th Cir.1978). In the interest of logic

court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law

shall not be deemed to arise under the laws of the United States.

**3.** Clause (A) provides:

(k)(1) Notwithstanding any other provision of law, (A) the Corporation shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28 . . .

and consistency, this Court must conclude that § 1789(a)(2)'s proviso qualifies all cases to which the Board is a party, not merely removal cases.

■ Having settled the issue of the scope of the proviso clause, we are still left with the question of whether or not the present suit is in the particular subcategory of suits meant to be excluded from federal court. This is a two-pronged question: 1) is NCUA a party to this suit in its capacity as a liquidating agent? and 2) does this suit involve "only the rights or obligations of members, creditors, and such State credit union under State law?" The answer to the second question appears to be "yes." This suit involves claims made by NCUA on behalf of the Fairlawn Credit Union, against members and creditors of the credit union. Moreover, following the dismissal of the federal RICO claims herein, the remaining claims are all brought under Rhode Island law. The first question, however, does not describe a perfect fit between the present suit and the excluded subcategory of suits.

To fit into the proviso's subcategory, NCUA must be present in the suit in its capacity as a "liquidating agent." In the present case, NCUA is acting as "conservator." Defendants urge a broad reading of "liquidating agent" to include all instances where NCUA has stepped into the shoes of the credit union in any of a variety of capacities, including conservator. However, the Court determines, based upon a close reading of the Federal Credit Union Act, that a narrow construction is more consistent with Congressional intent.

Defendants point to 12 U.S.C. § 1787(j) to support their contention that the term "liquidating agent" must be construed generally. That section deals with NCUA's procedure for appointing a liquidating agent. The section closes with: "For the purposes of this subsection, the term 'liquidating agent' includes a liquidating agent, receiver, conservator, commission, person, or other agency charged by law with the duty of winding up the affairs of a credit union." Plaintiff urges that the same section indicates that Congress recognized a distinction between liquidating agent and conservator and intended to use the terms interchangeably "for the purposes of this subsection" *only*. Plaintiff's analysis finds support elsewhere in the same section. Sections 1787(b)(2)(D) and (E) outline the powers of liquidating agents and conservators and make the following distinctions:

(D) Powers as conservator

The Board may, as conservator, take such action as may be—

(i) necessary to put the credit union in a sound and solvent condition; and

(ii) appropriate to carry on the business of the credit union and preserve and conserve the assets and property of the credit union.

(E) Additional powers as liquidating agent

The Board may, as liquidating agent, place the credit union in liquidation and proceed to realize upon the assets of the credit union, having due regard to the conditions of credit in the locality.

These sections indicate to the Court that Congress intended different functions and powers for NCUA according to its specific role in the circumstances. Although Congress was careful to note that "liquidating agent" was meant to include "conservator" in section 1787(j), nowhere else in the Act did Congress use the terms interchangeably. Therefore the distinction between the terms must be preserved in § 1789(a)(2). Consequently, the present suit does not fall into the proviso's excluded subcategory and federal jurisdiction is indicated under § 1789(a)(2).

Since the Court has concluded that it has jurisdiction under both 28 U.S.C. § 1345 and 12 U.S.C. § 1789(a)(2), defendants' motions to dismiss for lack of subject matter jurisdiction are denied.

III. FRAUD

■ All defendants have moved to dismiss Count I of the Amended Complaint for failure to state a claim for which relief can be granted, as plaintiff has not pled fraud with the particularity required by Fed.R.Civ.P. 9(b). Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

In a general fraud case, Rule 9 "requires specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." *See McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980). One main purpose of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim. *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985). *See also New England Data Services, Inc. v. Becher,* 829 F.2d 286, 288 (1st Cir.1987); *McGinty,* 633 F.2d at 228–229.

In Count I of its Amended Complaint, plaintiff alleges 1) that the Moosehorn property was sold to defendants Cinquegrano and Anthony Rosciti at less than fair market value, 2) that after the property was conveyed to Cinquegrano and Henry Rosciti for no consideration, they obtained a loan for an amount greater than the purchase price of the property secured by a mortgage on the real estate, and 3) that defendant Regine ultimately became a co-owner of the property for no consideration. These facts establish the basis of the fraudulent scheme allegedly engaged in by defendants, and the claim puts them on notice of the precise misconduct with which they are charged. The Court concludes that the Amended Complaint alleges fraud with sufficient particularity to comply with Rule 9(b) in this case and, therefore, it withstands a motion to dismiss under Rule 12(b)(6).

## IV. THE RHODE ISLAND RICO STATUTE

The Rhode Island counterpart to the federal RICO statute provides:

Prohibited Activities.—(a) It shall be unlawful for any person who has knowingly received any income derived, directly or indirectly, from a racketeering activity or through collection of an unlawful debt, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income in the acquisition of an interest in, or the establishment or operation of any enterprise.

(b) It shall be unlawful for any person through a racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

(c) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt.

R.I.Gen.Laws § 7–15–2 (1985). Racketeering activity is defined under Rhode Island law to mean any act or threat involving a variety of criminal offenses including murder, kidnapping, gambling, arson, robbery, bribery, extortion, larceny and prostitution. R.I.Gen.Laws § 7–15–1 (1985).

Plaintiff here brings its claim under § 7–15–4(c) which provides a private cause of action, as follows:

(c) Any person injured in his business or property by reason of a violation of this chapter may sue therefor in any appropriate court and shall recover treble damages and the cost of the suit, including a reasonable attorney's fee. In order for an injured person to recover pursuant to this subsection, it shall not be necessary to show that the defendant has been convicted of a criminal violation of this chapter.

R.I.Gen.Laws § 7–15–4(c) (1985). The Rhode Island Supreme Court, in the only case (a criminal case) in which it interprets the state RICO statute, wrote, "Thus, the elements of a RICO offense are (1) the commission of one act of racketeering activity and (2) the use of investment of the proceeds of the racketeering activity in the establishment, conduct, or operation of an enterprise." *State v. Brown,* 486 A.2d 595, 599 (R.I.1985).

Plaintiff alleges in its Amended Complaint that the actions of the individual defendants "constitute racketeering activi-

ty within the meaning of R.I.Gen.Laws § 7–15–1 because said actions involve larceny." Under Rhode Island law, any person who "obtain[s] from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud," will be deemed guilty of larceny. R.I.Gen.Laws § 11–41–4 (1981). In the instant case, plaintiff has alleged that defendants engaged in a fraudulent scheme to obtain the Moosehorn property from the credit union. Plaintiff has therefore alleged an act of racketeering activity within the meaning of the Rhode Island RICO statute.

Defendants argue that plaintiff's Amended Complaint fails to state a RICO claim because it does not establish the second element; that is, it does not identify the "enterprise" involved in the alleged racketeering scenario. An "enterprise" is defined by the RICO statute to include "any sole proprietorship, partnership, corporation, association, or other legal entity, and any union or group of individuals associated for a particular purpose although not a legal entity." R.I.Gen.Laws § 7–15–1(c) (1985). The statute also includes a section on construction which states: "The provisions of this chapter shall be liberally construed to affectuate its purpose." R.I.Gen. Laws § 7–15–10.

In *State v. Brown, supra,* the Supreme Court found that an enterprise existed but it did not elaborate on the statute's definition. In that case, defendants were three owners and/or salesmen at Lincoln Auto Sales, a car dealership, and two employees of the Rhode Island State Employees' Credit Union. The car salesmen were found to have bribed the Credit Union employees to authorize car loans to uncreditworthy individuals. After Lincoln Auto Sales received the proceeds from these loans, often for an amount greater than the value of the car purchased, the car buyers would default on their loan payments. The Supreme Court found that the bribes constituted racketeering activity and that Lincoln Auto Sales was an enterprise, within the meaning of the statute.

Although plaintiff has made no specific allegations as to the existence of the "enterprise," the Court must view the facts in the light most favorable to plaintiff and must not dismiss the claim unless it appears beyond doubt from the pleadings that plaintiff can prove no set of facts which would support a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The enterprise alleged in the instant case is certainly not as clearly recognizable an enterprise as was Lincoln Auto Sales in *State v. Brown.* However, construing the statute's terms liberally as mandated by the statute, and based on the facts alleged, the Court concludes that plaintiff may be able to establish that defendants Anthony Rosciti, Henry Rosciti, Michael Cinquegrano and Anthony Regine were a group of individuals associated for a particular purpose (namely, to defraud the Credit Union), thereby constituting an enterprise within the broad terms of the statute. Contrary to defendants' contentions, the underlying fraud has been averred with sufficient particularity to satisfy Rule 9(b), as stated previously. Defendants' motions to dismiss Count XI of the Amended Complaint alleging violations of the Rhode Island RICO statute are, therefore, denied.

## V. BREACH OF FIDUCIARY OBLIGATIONS

Plaintiff alleges that defendant Anthony Regine, an officer and director of Co–Op Credit Union (Fairlawn's predecessor) and its subsidiaries, Park Place Holding and Park Realty, breached his fiduciary duties to those corporations when he participated in the transactions involving the Moosehorn property.

As a director, Regine owed to Co–op, Park Place and Park Realty the duty of utmost good faith so that he was required to place the interests of the corporation before his own personal interests. *Eaton v. Robinson,* 19 R.I. 146, 31 A. 1058 (1895). The duty of utmost good faith is violated when a director or officer fails to disclose material facts to the corporate board. *Illinois State Trust Co. v. Conaty,* 104

F.Supp. 729, 734 (D.R.I.1952). Similarly, a breach occurs if a director misrepresents key information to the corporation. *Holmes v. Bateson,* 434 F.Supp. 1365, 1387 (D.R.I.1977). Taking advantage of a corporate opportunity for personal gain, or otherwise using the office for personal benefit at the expense of the corporation are further examples of conduct forbidden to those in fiduciary relationships. *Westerly Theatre Operating Co. v. Pouzzner,* 162 F.2d 821, 825–826 (1st Cir.1947), *Sladen v. Rowse,* 115 R.I. 440, 444, 347 A.2d 409, 412 (1975), *Boss v. Boss,* 98 R.I. 146, 152, 200 A.2d 231, 235 (1964).

According to plaintiff's version of the facts, Co-op Credit Union, Park Place Holding and Park Realty, at the urging of defendant Regine, engaged in a series of transactions involving the Moosehorn property. The net effect of these deals was a loss of at least $500,000 to Co-op, which translated into profit for Regine and his business partners, co-defendants here.

Taking plaintiff's account as true, as the Court must in considering defendant's motion to dismiss, it appears that Regine may very well have placed personal gain ahead of the best interests of the corporations which he served as a fiduciary. However Regine induced the corporations to act according to his scheme, his actions represent a breach of his duty of utmost good faith and loyalty to those bodies. Moreover, the alleged fraud is sufficiently stated to put defendant Regine on proper notice of the claim against him, and, therefore, satisfies the strictures of Rule 9(b). Consequently, defendant Regine's motion to dismiss Count II for failure to state a claim is denied.

## CONCLUSION

For the reasons set forth above, the Court grants the motions of all defendants to dismiss Count X of the Amended Complaint alleging violations of the federal RICO statute. Defendants' motions to dismiss all the remaining counts of the Amended Complaint for lack of subject matter jurisdiction are denied. The Court also denies the motions of all defendants to dismiss the state law claims alleging fraud and violation of the Rhode Island RICO statute (Counts I and XI), and the motion of defendant Regine to dismiss Count II of the Amended Complaint alleging breach of fiduciary duties.

*It is so ordered.*